## BURNSIDE v. ROBERTSON.

1. After accounting had in the Probate Court by an administrator and decree thereon finding a balance in his hands due to the distributees, which balance has not been paid, the probate judge may sue the sureties on the administration bond at law, for the benefit of the distributees, these facts constituting a breach of the bond. This case distinguished from *Wilbur & Son* v. *Hutto*, 25 *S. C.*, 247.

2. Where an administrator fails to show that an amount of money reserved to pay creditors was kept unemployed and properly so, he is liable for interest thereon.

3. Where the character of debtor and creditor is united in the same person, the debt is paid by operation of law. But where an administrator of an estate is also guardian of distributees thereof, he is not indebted as administrator to himself as guardian until the residuum for distribution is ascertained; and, in this case, such residuum not having been ascertained until after the wards had attained their majority, when the debt became payable to them and not to their former guardian, the sureties on the administration bond were not discharged.

4. *Coleman* v. *Smith*, 14 *S. C.*, 514, explained.

Before WALLACE, J., Laurens, February, 1888.

This was an action by A. W. Burnside, as probate judge, against Toliver Robertson, as executor of William Mills, who was a surety on the administration bond of M. M. Hunter. The opinion states the case.

*Mr. W. H. Martin*, for appellant.

*Messrs. Bomar & Simpson,* contra.

June 14, 1888.   The opinion of the court was delivered by

Mr. Chief Justice Simpson.   In this action below, the appellant, Toliver Robertson, was sued as executor of William Mills, deceased, on the administration bond of Dr. J. P. Hunter, administrator of M. M. Hunter, on which bond Mills was one of the sureties.

The letters of administration were granted to Dr. Hunter, January 15, 1868, and on December 3, 1868, a statement was made in the Probate Court for Laurens County, the proper county, by the said administrator of the estate in his hands, showing a balance (after reserving $1,025 to pay certain claims supposed to be outstanding, to wit : a note of William Mills, $500, J. H. Parks, $500, and A. Nabors, $25, aggregating $1,025) of $3,193.76, subject to distribution among the distributees, to wit, the widow and seven children. This statement was, however, left open, and, without a formal decree, on account of uncollected notes and accounts due estate, reserved to meet contested claims; so that the amount for distribution was hypothetical merely. In 1886, the distributees petitioned for final settlement, which was had in November, 1886, the probate judge decreeing the amount on hand at that date, subject to the payment of a debt to Burnside, fees, and costs, to be $3,114.68, of which the widow's share was $861, and the unpaid five children each $344.60. In this last settlement interest was charged against the administrator, on the whole amount, including the amount reserved in 1868, to meet outstanding claims. From this decree an appeal was taken to the Circuit Court. The decree, however, was affirmed in 1887, but no execution was issued to enforce it. It appeared that Dr. Hunter, the administrator, in November, 1868, had been appointed the guardian of three of the children of his intestate, being three of the five decreed to be entitled to a share by the probate judge in his decree of 1886.

Under these circumstances the action below was brought upon the administration bond against the appellant, Robertson, as executor of Mills, one of the sureties. At the hearing the defendant interposed an oral demurrer, on the ground that the com-

plaint did not state a cause of action in that it did not allege that the administrator had committed a *devastavit*. This was over-ruled and the case proceeded, on its merits, his honor, Judge Wallace, decreeing, in accordance with the settlement in Probate Court, with interest, that the plaintiff was entitled to a judgment for $3,388.29, the judgment to be entered against the executor, defendant, for the benefit and to stand as security for the follow-ing sums, to wit: for the widow, Harriet Hunter, $865.51, and interest; for William M. Hunter, $344.69, and interest; for J. L. Hunter, Fannie C. Parks (*née* Hunter). Sam'l S. Hunter, and Lillie M. Kilgore, each $344.69, and interest; for a debt due A. W. Burnside, $397.13, and interest; for probate judge costs, $23; for petitioner's attorneys costs, $30, and for other costs and fees, $80, &c., &c.

From this decree the defendant appealed upon the following grounds: I. Because his honor erred in overruling the defen-dant's oral demurrer. II. That he erred in allowing interest on the amount reserved by the administrator to pay debts shown by the accounting in Probate Court, on December 3, 1868. III. That he erred in holding that the amounts due the wards of the administrator were not transferred to him as guardian by operation of law.

Under the first ground, it is contended that before a cause of action can accrue against the surety of an administrator on the administration bond, a *devastavit* must be established against the administrator, which must be alleged in the complaint, as a nec-essary element in the cause of action; and *Hutto* ads. *Wilbur & Son* (25 *S. C.*, 247) is cited as authority for the position. The marked difference between that case and the case here, is that there, there had been no accounting by the administrator. A creditor of the estate had sued the administrator on a claim due him, had obtained judgment, and had issued execution, upon which a *nulla bona* return had been made; whereupon an action was brought against the sureties on the administration bond. The defendants demurred on the ground that the complaint did not state facts sufficient to constitute a cause of action, there being no allegation that the administrator had been brought to an ac-counting, nor that a *devastavit* had been established. This

demurrer was sustained by the Circuit Court, which ruling was affirmed by this court on appeal. The case here, however, is an action brought by the probate judge on the administration bond for the benefit of the distributees, after a regular accounting and decree against the administrator, had in the Probate Court, settling and adjudicating the rights of the respective parties, and the amounts due said distributees, which amounts the administrator had failed to pay over, all of which was alleged in the complaint.

There has been some confusion in this State on the question of actions against the sureties on administration bonds, especially in equity. At one time it was held that, even in the equity jurisdiction, sureties could not be joined with the administrator in a bill for an accounting. *Teague* v. *Dendy*, 2 *McCord Ch.*, 209; 16 *A. D.*, 643; *Glenn* v. *Conner, Harp. Eq.*, 267. Then an exception was made in cases where the administrator had left the State. *McBee* v. *Crocker, McMull. Eq.*, 485. See also *Gayden* v. *Gayden*, and *O'Neall* v. *Herbert, McMull. Eq.*, 436, 495. And finally in *Taylor* v. *Taylor* (2 *Rich. Eq.*, 123), the doctrine was fully established that in a bill against an administrator for an account, the sureties might properly be made parties. While this is the rule in equity, it is true that no action accrues at law against the sureties on the administration bond, until the bond has been breached, which breach must be alleged in the complaint. An accounting before the probate judge, and a failure to comply therewith, has always been held a sufficient breach to authorize action on the bond. See the remarks of Judge O'Neall in *Crocker and McBee, supra;* also *Wilbur & Son* v. *Hulto, supra*; *Lyles* v. *Caldwell*, 3 *McCord*, 225; *Anderson* v. *Maddox, Ibid.*, 237; *Harrington* v. *Cole, Ibid.*, 509; *Jones* v. *Anderson*, 4 *McCord*, 114. We think the demurrer was properly overruled.

2nd. Should interest have been charged on the funds reserved by the administrator to meet contested claims as alleged? The rule upon this subject is, that if an administrator or other trustee retains funds of the estate in his hands, without profit or interest, under an exigency demanding such a state of facts, that then he should not be charged with interest. The onus, however, of showing that he kept the funds unemployed, as a general rule,

seems to be upon him, which may generally be done "by show-ing that in ordinary prudence, from the exigencies of the estate, he should have kept the money on hand," in support of his de-fence that he did so actually retain it, as was said in the case of *Dent and Duncan*, 5 *Rich. Eq.*, 14, where the defendant had set up in his sworn answer such a defence. See also *Brown* v. *Vin-yard, Bail. Eq.*, 460; *Lafont* v. *Ricard, Ibid.*, 487; *Ex parte Glenn*, 20 *S. C.*, 71. There seems to be no allegation or claim here, that there was any testimony in the case to the effect that the administrator did actually keep the retained funds idle. We must presume, therefore, that there was none, and consequently there was no ground for the Circuit Judge to release the interest complained of.

3rd. Should the Circuit Judge, under the facts of this case, have held that the amounts found due the wards of the adminis-trator, three in number, were transferred by operation of law to his guardianship account, to the relief of his administration bond? The administrator, it appears, was appointed guardian of these three minors in 1868, shortly after he was granted letters of administration on the estate of their father. At the time of the settlement of the estate in the Probate Court in 1886, these minors were all of age, and had been for some years, and a de-cree was pronounced in their favor, adjudicating to each a specific amount, which decree, upon appeal to the Circuit Court, was affirmed, and soon thereafter the action below was commenced.

It is well established that where the relation of debtor and creditor becomes united in the same person, as a general rule, the debt is regarded as paid, by operation of law, on the ground that no action can be brought in such case to enforce the debt; but for this principle to be applicable, the relation of debtor and creditor must have existed and they must become united in the same person. This principle has been applied to several classes of cases, as where debtors have become executors or administra-tors of estates to which they were indebted, and in cases where executors or administrators have become guardians of minors, legatees, and distributees in said estates. But it has been done, as said above, upon the fact that the relation of debtor and cred

itor existed, because there can be no union of the two in one person in advance of their separate existence.

Now, when does an administrator become indebted to the distributees of the estate or to the guardians of the minors, in such way as it may be said that the relation of debtor and creditor exists, as to any precise sum ? It would seem not before the estate was in condition, at least, to ascertain the amount due each, by the debts and expenses having been paid and all assets collected, and residuum of the estate in condition for distribution. This is the idea held out in *Simkins* v. *Cobb*, 2 *Bail.*, 60, 64. In that case the last return of the administrator was made in 1823, but the final settlement was not made until 1829, but the court held the last return showed the amount for distribution among the distributees, and that inasmuch as at that date the ward of the administrator was not of age, the relation of debtor and creditor had united the administrator and guardian, and consequently that the amount due the ward had become transferred to the guardian, relieving the administrator's bond. The court further said, that but for this return in 1823, the amount due would not have been ascertained until the settlement in 1829, at which time, the ward being of age, the powers of the guardian to receive the money would have ceased—the majority of the ward being a legal termination of the authority of the guardian over the person and estate of his said ward ; in which event, there being no union of debtor and creditor in the guardian, the administration bond would not have been discharged.

This case, and the principles there announced, we think, should control the case before the court. Here the residuum of the estate subject to distribution had not been ascertained until the settlement in 1886. At that time the wards of the administrator had reached their majority (they had all been of age for some years before). Their majority terminated the guardianship, and prevented the relation of debtor and creditor from arising in the guardian. *Simkins* v. *Cobb, supra.* The wards, therefore, with the other distributees, had the right to look to the administration bond for their claims.

It may seem that there is a conflict here between the case in hand and *Coleman* v. *Smith* (14 *S. C.*, 514), where the writer

of this opinion stated in rather broad terms, as follows, and as
quoted in appellant's argument: "And it has been held in
several cases that where an administrator becomes guardian of
the distributees of his intestate's estate, his administration bond
is at once discharged and liability attaches at once on his guar-
dian bond"—citing several cases, among them *Simkins* v. *Cobb,*
*supra.* The immediate preceding remark, however, was as
follows: "This principle [alluding to the principle of payment
by operation of law] is well understood and applies in all cases
where a party unites the two characters of debtor and creditor,
inasmuch as in such cases no suit can be instituted to enforce
payment." The meaning of the two when taken together being,
that when the administrator becomes indebted to himself as
guardian, that then at once his administration bond is discharged
and liability at once attaches on his guardianship bond, as in the
cases there cited, among which was *Simkins* v. *Cobb, supra.*

It is the judgment of this court, that the judgment of the Cir-
cuit Court be affirmed.